2me¡99
91  586

CASE 40—PETITION ORDINARY—JULY 8.

# Taylor vs. Nunn.

APPEAL FROM BOURBON CIRCUIT COURT.

1. A bond was executed by the sheriff of Bourbon county, on the 1st of January, 1855, (at the time he qualified as sheriff,) for the collection and payment of " the *county levy* and *public dues* " of the county for that year.   *Held*—That it embraced taxes levied by the county court in October, 1854, to be collected in 1855, to pay the interest on bonds previously issued by the county to the Maysville and Lexington and Covington and Lexington railroad companies.   The sheriff, by virtue of his office, had complete legal authority to collect said railroad tax, and his sureties in the bond were liable for his failure to pay over the same.

2. That the county court by a subsequent order, made in June, 1855, before any of the railroad tax was collected, appointed the sheriff *collector* thereof for that year, (who thereupon executed bond with security,) did not supersede him as collector in the capacity of sheriff, or annul or revoke the official authority with which he was already invested by law, and which could have been revoked only by the appointment of some other person as collector of the special tax.

3. The order of the county court *supra* neither created a new office nor conferred any new authority upon the appointee ; but the only practicable effect of the order (whatever may have been the object of the court) was to require of the sheriff additional security for the performance of duties which the law had before devolved upon

him as sheriff. The bond executed by him in June, under said order, did not have the effect to exonerate his sureties in the bond executed in January from liability on account of the railroad tax.

G. & R. T. Davis, for appellant, cited *Sess. Acts* 1850–1, *p.* 194; *Sess. Acts* 1851–2, *p.* 393; *Sess. Acts* 1848–9, *p.* 237.

R. Hawes and J. B. Beck, on same side, cited *Session Acts* 1850–1, *p.* 195; *Session Acts* 1851–2, *pp.* 394, 627; *Session Acts* 1848–9, *p.* 237; 5 *Dana,* 110; *White & Tudor's Leading Cases in Equity,* 61, 62, 63, 64; 5 *Dana,* 157; 1 *Mon.,* 206; 8 *B. Monroe,* 139; 4 *Bibb,* 572.

Robinson & Johnson, for appellee, cited 9 *Dana,* 183; 2 *B. Mon.,* 280; *Sloan, &c., vs. Ellis, &c., MS. opinion, October,* 1853; 6 *B. Mon.,* 292; *Ib.,* 560; 5 *Dana,* 112; *Ib.,* 158; 1 *Mon.,* 208; 2 *Sess. Acts* 1850–1, *p.* 194; *Sess. Acts* 1851–2, *p.* 394.

JUDGE DUVALL DELIVERED THE OPINION OF THE COURT:

On the 1st of January, 1855, Thomas A. Taylor qualified as sheriff of Bourbon county, and with the appellee, Nunn, as one of his sureties, executed three bonds to the Commonwealth— one for the performance of his general duties as sheriff, another for the collection of the State revenue, and the third stipulating "that said Thomas A. Taylor, as sheriff, shall well and truly collect, account for, and pay over to the persons entitled to receive the same, according to law, the county levy and public dues of the county of Bourbon for the year 1855," &c. These bonds were executed by Nunn, at the instance of the appellant, H. Taylor, who, as appears from his answer, was the father of T. A. Taylor, and who, on the same day, executed to Nunn the following bond of indemnity:

"I, Hubbard Taylor, senior, do promise and obligate myself to William Nunn that I will indemnify and save harmless the said William Nunn against all damages, loss, and liabilities which he may incur by reason of his securityship for Thomas A. Taylor, sheriff of Bourbon county, in his official bonds, given as sheriff as aforesaid. Witness my hand and seal this 1st day of January, 1855.

(Signed)                    "Hubbard Taylor, Sr."

It appears from the record that the county of Bourbon had previously issued bonds to the Maysville and Lexington rail-

road company, and to the Covington and Lexington railroad company; and being authorized by the charters of those companies to provide by taxation for the payment of the interest on those bonds, the county court, in October, 1854, assessed for that purpose a tax of nine cents on each one hundred dollars' worth of property in the county for the bonds to the Maysville company, and of seven cents on the one hundred dollars for the bonds to the Covington company. The statute authorizing the levy in the case of the former company provides, "that the tax shall be levied and collected as other taxes are collected in this State, and by the same collecting officer;" and that bond and security shall be demanded of the sheriff or collecting officer for the performance of his duties. The act relating to the Covington company provides that the county court shall, if necessary, have power to appoint an assessor, collector, and treasurer, and to take from them bonds, with ample security, conditioned for the faithful discharge of their duties, &c.

None of this railroad tax was collected by Taylor until June, 1855, when the county court of Bourbon made the following order:

"Ordered, that Thomas A. Taylor, sheriff of this county, be appointed collector of the railroad tax for the present year." And thereupon Taylor, together with the appellant, the appellee, and William Way, as his sureties, executed to the Commonwealth a bond conditioned "to collect, account for, and pay into the hands of the treasurer of the sinking fund for Bourbon county, according to law, all sums of money so levied and collectable, and faithfully discharge his duties as collector of said railroad tax."

Taylor afterwards became a large defaulter and insolvent. Suit was brought in the name of the treasurer of the sinking fund, &c., against him and his sureties on the bond last mentioned, in which judgment was rendered against all the defendants. Of that judgment Nunn was compelled to pay over three thousand dollars, for the recovery of which he afterwards instituted this action against the appellant, upon his bond of indemnity, and obtained a judgment for the amount so paid, with interest from the time of payment.

From that judgment this appeal is prosecuted.

The first and most important inquiry arising upon the foregoing facts, and the solution of which involves the real merits of this controversy, is, whether T. A. Taylor had authority, by virtue of his office of sheriff, to collect this railroad tax, and whether it was embraced by the bond executed by him and his sureties on the 1st of January, conditioned for the "collection of the *county levy* and *public dues* of the county of Bourbon for the year 1855?"

Prior to the passage of the act of 1797, the sheriff was, *ex officio*, the collector of the county levy. By the latter act the county courts were authorized " to appoint the sheriff of their county, *or any other person*, collector of their county levies," &c. The act of 1799 provides that " it shall be the duty of the sheriff to collect the levies laid by the county court of his county, and shall enter into bond with security therefor," &c. It was decided that this act did not repeal the previous act of 1797, authorizing the county courts to appoint a collector of the levy other than the sheriff; that if the sheriff is willing to act, and execute bond, he should be preferred as collector ; but if he fail or refuse to do so, the court may appoint any other person. (4 *J. J. Mar.*, 250.) And thus the law has stood ever since, the Revised Statutes having made no material alteration either as to the rights or duties of the sheriff in relation to the collection of the county levy. (*Revised Statutes, secs. 3 and 4, p.* 210.)

In the case of *Grayham, &c., vs. Washington county court*, (9 *Dana*, 184,) it was decided, that although the sheriff had not been appointed collector of a special levy, laid *after* he had executed his bond, yet, as his bond was given for such county *levies* as should become due and collectable while he continued in office, it embraced not only the levy laid before he gave his bond, but that also which was laid afterwards, and that he was therefore bound to collect and account for both. So in the case of *Colter vs. Morgan's administrator*, (12 *B. Mon.*, 282,) in which the sheriff was qualified and gave bond, in 1835, and in the *succeeding year* the legislature passed an act authorizing the county court of Washington to levy an *ad valorem* tax, in

Taylor vs. Nunn.

pursuance of which act the county court ordered that the sheriff should levy and collect twenty-five cents on each one hundred dollars for a special local purpose, it was held that the sureties of the deputy who had executed a bond of indemnity to the principal sheriff, dated in 1835, were responsible for the failure of the deputy to pay over the special levy collected by him.

The decision in the case of *Sloan, &c., vs. Ellis, &c., (MS. opinion,)* rests upon the same principle, though applied to a state of fact more analogous to the case before us. Ellis, it appears, was appointed collector of the county levy, and gave bond for the faithful discharge of his duty as such in May, 1849. In June, of the same year, a special levy for railroad purposes was laid, and Ellis was appointed collector thereof, *upon his executing bond with surety, in the penalty of ten thousand dollars.* This bond he failed to execute; but he and his deputies nevertheless proceeded to collect this special levy.

It was decided that Ellis had, before this last appointment as collector, already executed bond as collector of the *county levy*, and that he and his deputies had a right to proceed in the collection of the same by virtue of his office of sheriff, and of the bond which he had already executed; and that the county court did not supersede him as collector by simply requiring an additional bond, the execution of which they could have enforced, or have appointed another collector; but having failed to do either, Ellis and his deputies had a right to proceed by virtue of their office and of the prior bond; that the word *levy* is a word of aggregation, and includes in its signification as well the levy for the railroad as that for ordinary purposes. The two cases of *Grayham vs. Washington county court*, and of *Colter vs. Morgan's administrator, supra*, are referred to as settling the same principle.

These authorities establish conclusively the following propositions:

1. That T. A. Taylor, by virtue of his office of sheriff, had complete legal authority to collect this railroad tax, and that his sureties in the bond given in January, 1855, for the collection of "the county levy and public dues of the county of Bourbon for the year 1855," became liable for the failure of the

sheriff to pay over the railroad tax "to the person entitled to receive the same."

2. That the county court, by its subsequent order of June, 1855, did not supersede him as such collector, or annul or revoke the official authority with which he was already invested by law, and which could have been revoked only by the appointment of some other person as collector of the special tax.

3. That this order of the county court neither created a new office nor conferred any new authority upon the appointee, but that the only practical effect of the order (whatever may have been the object of the court) was to require of the sheriff additional security for the performance of duties which the law had before devolved upon him as sheriff.

But it is earnestly contended that the bond given by Taylor and his sureties under this special order of the court in June, had the effect to exonerate the sureties in the bond of January from all liability on account of the railroad tax, because the two statutes referred to required the execution of such bond by the collector.

This position cannot be maintained. It has just been shown that the bond of January, for the collection of the county levy, &c., embraces the railroad tax, and the bond of June must, therefore, be regarded merely as additional or cumulative and special security for a duty which had been before provided for by a more general but not less effectual security. In other words, both the bonds covered the same liability; and it has been repeatedly decided that, in such cases, the execution of the subsequent bond does not exonerate the sureties in the first. (*Hutchcraft, &c., vs. Shrout's heirs*, 1 *Mon.*, 208, *and other subsequent cases.*)

But the whole argument of the counsel for the appellant, so far as it attempts to discriminate between this case and that of *Sloan vs. Ellis*, is effectually disposed of by the two cases of *Withers, &c., vs. Hickman, &c.*, (6 *B. Mon.*, 292,) and *Taylor vs. Taylor's ex'r*, (*Ibid*, 560,) in which this court decide that, "though the funds arising from the sale of the land and slaves of infants on the petition of their guardian, under the statutes, are under the control of the chancellor, and he may and is

Taylor vs. Nunn.

required to take bond and security from the guardian for the faithful disbursement of the same, yet this bond is required as a precautionary measure, and as additional security to that which has been taken by the county court, and does not discharge the sureties in the county court bond from their responsibility for the fund if it has come to the hands of the guardian. All the sureties in both bonds are equally bound for the same, and all may be made responsible to the infants. Nor is there any hardship in rendering the sureties in the county court bond responsible, as the statutes were in force when they executed the bond, by which they were apprised that the lands and slaves of the wards might be sold on the petition of their guardian, and the funds placed in his hands; and the condition of their bond requires that 'the guardian shall diligently and faithfully collect, account for, and pay to the said orphans all the estate which they now or may hereafter be entitled to during their minority, or such other persons as may be entitled to receive the same,' &c."

The points of analogy between these cases and the one under consideration are so obvious and striking that they need not be pointed out or enlarged upon. The principles settled by the two cases, even in the absence of all other authority, establish beyond question the liability of Nunn upon his bond of January, 1855, for the defalcation of Taylor in failing to pay over to the proper officer of the *sinking fund* the money collected by him on account of the railroad tax.

And it results, as a legal consequence, that the appellant became responsible to Nunn on the bond of indemnity for the amount which the latter may have been compelled to pay on account of such defalcation.

But the judgment is for too much. On the bond of January there were four sureties, and it is not pretended that either was insolvent or unable to meet his share of the joint liability arising under that bond. By the terms of the bond of indemnity, Nunn is protected against " all damage, loss, or liabilities which he may incur by reason of his suretyship " on the bond upon which the three other sureties were jointly bound with him. It is clear that the " damage, loss, and liabilities " which

Nunn legally incurred by reason of that suretyship was *one fourth* of the amount of the sheriff's defalcation, and to that extent only was the appellant liable upon his bond of indemnity. Yet the judgment complained of is for one third of the amount of the defalcation, instead of the one fourth, as it should have been. If Nunn paid more than a fourth of this amount, or failed to avail himself of his right to contribution as against all his co-sureties on the bond, which created the joint liability against all, such payment or failure on his part cannot have the effect to enlarge the liability of the appellant.

For this error the judgment must be *reversed*, and the cause remanded with directions to correct the judgment in the particular mentioned.