CASE 30—PETITION ORDINARY—JUNE 28.

# Commonwealth for Mercer County Court vs. Gabbert's adm'r, &c.

### APPEAL FROM MERCER CIRCUIT COURT.

1. The sureties in a sheriff's county levy bond are liable for the amount of a special tax, collected by him, which was authorized by an act of the Legislature, passed after the bond was executed, and subsequently imposed by an order of the county court.

2. The collection of the county levy is part of the official duty of the sheriff.—The increase of the levy, after he has executed bond, imposes no additional duty upon the sheriff.—The amount of the levy, during his continuance in office, is subject to legislative action. (*Colter vs. Morgan's adm'r*, 12 *B. Mon.*, 278; *Taylor vs. Nunn*, 2, *Met.*, 199.)

3. Sureties undertake that the sheriff shall do whatever he may be legally required to do.

4. A sheriff's county levy bond is not invalid as to the sureties therein, because it was not attested by the county court clerk. The statute

Commonwealth for Mercer County Court vs. Gabbert's adm'r, &c.

does not require *this bond* to be attested by the county court clerk—not even for identification; the recitals of the bond, and the county court order of approval, being sufficient for that purpose.

5. A settlement and report to the county court, made by *two persons* appointed for that purpose, showing the balance of the county levy due by the sheriff, is competent and *prima facie* evidence in an action against the sheriff and his sureties, although such settlement was made with the sheriff after he went out of office; and the statute provides that the county court shall appoint *some suitable person* to make such settlement.

A word importing the singular number may extend and be applied to several persons or things. (*Revised Statutes, sec.* 12, *chap.* 21.)

A. Harding & T. C. Bell,         For Appellants,
CITED—

*Civil Code, sec.* 125.

*Rev. Stat.*, 1 *Stanton*, 297, 301, 338, *and* 2 *Ib.*, 262, 339–40, 396.

*Pr. Decisions*, 211; *Palmer vs. Craddock.*

15 *B. Mon.*, 569; *Williams vs. Sandford.*

9 *Dana*, 184; *Grayham, &c., vs. Washington County Court.*

12 *B. Mon.*, 282; *Collier vs. Morgan's adm'r.*

2 *Mct.*, 199; *Taylor vs. Nunn.*

*Act of Feb.* 20, 1864, *authorizing the levy, Session Acts*, 464.

18 *B. Mon.*, 34–5; *Commonwealth vs. Graver & Clary.*

*Act of Feb.* 17, 1836, *Session Acts*, 182.

*Act of* 1811, *M. & B.*, 507; *Ib.*, 515.

*Act of Feb.* 9, 1864, *Myers' Sup.*, 126, *sec.* 5.

2 *B. Mon.*, 295; *Mize, &c., vs. Noland, &c.*

5 *B. Mon.*, 195–6; *Justices of Grant Co. vs. Bartlett.*

*Revised Statutes*, 1 *Stanton*, 261, *sec.* 12.

*MS. Opn., Jan.*, 1857; *Weaver, &c., vs. Bracken Co. Court.*

14 *Barb. N. Y.*, 290–92; *The People vs. Cook.*

4 *Selden's N. Y.*, 88–9.

9 *B. Mon.*, 130–1; *Conn vs. Davis.*

Commonwealth for Mercer County Court vs. Gabbert's adm'r, &c.

P. B. Thompson, sr.,

J. B. & P. B. Thompson, jr.,

M. J. Durham,

John G. Kyle,

E. J. &. T. J. Polk,

W. A. Hooe, and

Chas. A. Hardin,　　　　　　　　　　　For Appellees,

CITED—

　　Revised Statutes, sec. 6, art., 3, chap. 26; sec. 2, art. 21,
　　chap. 27.

　　Act of 1864, Myers' Sup., 126.

　　2 B. M., 295; Mize, &c., vs. Noland, &c.

　　7 B. Mon., 447; Commonwealth for Russell vs. Brass-
　　field.

　　MS. Opn., Jan., 1857; Weaver vs. Bracken County
　　Court.

　　9 Dana, 183; Grayham, &c., vs. Washington County
　　Court.

　　12 B. Mon., 278; Colter vs. Morgan's adm'r.

　　2 Met., 200; Taylor vs. Nunn.

　　2 Duvall; O'Donoghue vs. Aikin.

　　1 J. J. Mar., 284; 7 B. Mon., 169.

　　1 Parson on Contracts, 4th ed., p. 503.

　　1 Harr. & Gill's Md. Rep.; Union Bank vs. Ridgley.

　　9 Wheaton, 680; Miller vs. Stewart.

　　4 Bush, 303; Fletcher vs. Leight, Barrett & Co.

CHIEF JUSTICE WILLIAMS DELIVERED THE OPINION OF THE COURT:

　　Appellee, Vanarsdall, qualified as sheriff of Mercer
county, at the January term, 1864, of its county court,
and gave bond, with the other appellees as his securi-
ties, to "well and truly collect and account for, and
pay over to the persons entitled to receive the same,
according to law, the *county levy and public dues of the
county of Mercer for the year* 1864; and that he shall,

when called upon by the county court, settle his accounts, and pay over the amount of public money in his hands belonging to said county; and that the said J. C. Vanarsdall *shall, in all things, well and truly demean himself, and perform the duties of collector of the county levy of said county.*"

In February, 1864, the Legislature enacted a special statute, authorizing the Mercer county court to sell the old jail and lot, and to erect a new jail with its proceeds, and to levy an *ad valorem* tax on the property of the citizens of the county, subject to revenue taxation by the State, to make up any deficit; and that the justices of the peace might so levy, at any regular term of the county court. By authority of this act the justices did, at the June term of the county court, levy an *ad valorem* tax, and ordered the sheriff to collect it at the same time he collected the State revenue and the previous county levy; which order went to his hands with the tax-book, and he did so collect it; and having made default, this suit, to recover from him and his securities, was brought for the use of the county court; and the circuit court having released the securities, this appeal is prosecuted to reverse that judgment.

It is urged against the validity of the bond that the county clerk never attested it. The order of the county court shows it was executed and accepted, with the identical names attached to it. The present clerk proves that it has remained in the office as part of his records, being delivered to him as such by his predecessor.

This bond is in exact conformity to the form enacted as part of the statute (1 *Stant. Rev. Stat.*, 297), which does not require the attestation of the clerk, nor does the statute so require in so many words; whereas, the statute requires the securities in the general official bond

"to be approved by the county court, and the bond taken by its clerk under its supervision, *and witnessed by him or his deputy*." (2 *Stant. Rev. Stat.*, 339–40.)

Whenever this bond is approved by the court, we are not prepared to say the want of attestation by the clerk would be fatal, inasmuch as it seems merely directory, and merely for identification; whilst the approval of record by the court is the essential thing to give it the force of a statutory bond, as was decided by this court in *Fletcher et al. vs. Leight, Barrett & Co.*, 4 *Bush*, 303. But when, as in this case, the statute does not require the attestation of the clerk, even for identification, we certainly could not hold that its absence is fatal; the recitals of the bond, and county court order of approval, being all sufficient for that purpose.

The most serious objection, however, is, that the enactment and levy of this tax was subsequent to the execution of the bond; and, being a subsequently imposed duty, created a liability not contemplated or embraced by the covenants of the bond.

By section 3, article 2, chapter 26, 1 Stanton's Revised Statutes, 297, it is enacted, that "the sheriff, by virtue of his office, shall be the collector of the county levy; and he shall, at the term of the court when the county levy is imposed, or at any subsequent term of said court, before he proceeds to collect the county levy, execute bond," &c.

And by section 4: "If the sheriff shall fail or refuse to give such bond, when required by the county court, he shall forfeit and vacate his office of sheriff."

By section 6, article 3, "the county court shall, in the month of September in each year, and oftener if it be advisable, cause a settlement of the sheriff's or collector's accounts, concerning the county levy, to be made and

reported to the court; and for that purpose, shall appoint some *competent person* as *commissioner;* and upon receipt and approval of said report, shall make such order concerning the remainder of the money, if any due to the county, as they may deem necessary for its safe-keeping."

By the subsequent statute of March 9, 1854 (1 *Stant. Rev. Stat.*, 301), only ninety per cent. of the county levy is to be required of the sheriff at the September settlement, and the other ten per cent. is to remain in his hands until he settles his delinquent list at the following January term of each year.

But as the county court construed said special enactment to authorize it to assess said levy at any regular monthly term, and not at its regular levy term; and as the enactment is certainly susceptible of that construction; and as it would be more in harmony with the presumed objects and intention of the Legislature to have a new jail erected with as little delay as possible; and as the county court did actually lay the levy, and the people paid it without any question of the correctness of the county court judgment thereon; and as the sheriff actually collected it, we think it now too late to question its regularity; and shall, therefore, proceed to determine whether the bond executed imposed a liability therefor on the securities therein.

In *Grayham et al. vs. County Court of Washington* (9 *Dana*, 184), this court held, that the bond being for the collection of such county levies as should become due, it not only embraced the previously but subsequently laid levy; and so, notwithstanding the sheriff had not been specially appointed the collector of the last laid levy, for it was his official duty to collect it in the absence of any specially appointed collector; also, that it was not the statutory duty of the county court to

proceed against the sheriff immediately upon the accru-
ing of his liability; and the forbearance to sue him for
a year was no bar as against his securities.

*Colter vs. Morgan's adm'r* (12 *B. Mon.*, 278) was an
action by the sheriff on the indemnifying bond of his
deputy, for not paying over a county levy authorized
by a subsequent statute; the responsibility of the secur-
ities depended upon the responsibility of the principal
as sheriff; and the court said, " the objection to the
judgment most relied on is, that the defalcation of the
deputy was for the special levy authorized by the Legis-
lature and imposed by the county court, after the ex-
ecution of the bond of indemnity; and the security,
therefore, was not liable, as he did not undertake that
the deputy should do more than the law required, at
the date of the bond."

This case did not depend on any peculiar phraseology
or covenants in the bond, but depended on the legal
official duty of the principal.

The court said: " The collection of the county levy is
part of the official duty of the sheriff. The amount of
the levy is fixed annually by the county court. The
sureties may be presumed to contemplate the collection
of the county levy by the sheriff, as laid by the county
court. *The increase of the levy imposes no additional duty
upon the sheriff*" but that which is properly incident to
the office, nor does the manner in which the county
court is authorized to collect the levy, whether by tax-
ing the tithables, or by an *ad valorem* tax upon the prop-
erty, have that effect.

" If the Legislature should increase the revenue tax,
after a sheriff had executed his official bond, could it
be contended with any plausibility that the sureties
were not liable for the amount of the increased tax

collected by the sheriff. *It is the official duty of the sheriff to collect the revenue tax and the county levy laid to meet the ordinary expenditures of the county, the amount of each to be subject, during his term of office, to legislative action.*"

And *Taylor vs. Nunn* (2 *Met.*, 199) was also a suit on the indemnifying bond given by Hubbard Taylor to Nunn to save him harmless, as one of the sureties of Thos. A. Taylor in his sheriff's official bond. The county court subsequently appointed the sheriff collector of the special levy made to pay interest on railroad bonds of the county, and took another bond, with appellant, appellee, and Way, as securities therein; but appellee took no further indemnifying bond from appellant. The sheriff having made default, and Nunn having paid over three thousand dollars, sought to hold H. Taylor responsible therefor; and this court held that the sheriff was liable, on his first county levy bond, which was not superseded by his collector's bond, because the collection was part of his official duty, and the second bond was only additional; and that H. Taylor was responsible to Nunn on his indemnifying bond. Even had these decisions not been made, we can hardly doubt that it is the official duty of the sheriff to act as collector of the county levies, whether *per capita* or *ad valorem*, not only for such as are authorized and assessed when the sheriff executes his bond, but for all such as may be subsequently authorized by law, and such as the county court shall direct him to collect. It is impossible to foresee and provide for all the contingencies which may happen in each individual county of the State; hence the general covenant " that he shall, in all things, well and truly demean himself, and perform the duties of collector of the county levy of said county," which is a general covenant added to the foregoing one, that he

shall collect and pay over, "according to law, the county levy and public dues of the county of ——, for the year —." We have no doubt that a subsequent authorized additional tax is as much within these covenants, in their true spirit and meaning, as was the levy then authorized and assessed. In other words, whatever the sheriff may legally be required to do, the securities undertake he shall do ; for he is to discharge his legal duty at all times during his continuance in office by virtue of that bond.

But it is also insisted, that as the statutes authorize the county court to appoint some suitable person as commissioner to settle with the sheriff, and as the county court in this case appointed two persons who settled with the sheriff, and reported the balance due, that such settlement and report is no evidence. It is sufficient to say that, by *section* 12, *chapter* 21, 1 *Stanton's Revised Statutes*, 261, it is enacted that "a word importing the singular number only, may extend and be applied to several *persons* or things as well as to one *person* or thing," and *vice versa*.

Even without this statute it would be difficult to see why a settlement with two persons should not be good merely because the statute used the singular number.

The old statutes authorized the county court only to appoint two commissioners of their own body. Therefore, when they selected persons not justices of the peace, as there was no law for conferring such power on them, the county court could not supply this legal want of power by their own order, for this would be to enact law; hence a settlement made by such unauthorized commissioners was no evidence against the securities, and so properly held by this court in *Mize, &c., vs. Noland,* 2 *B. Mon.,* 295. But the Revised Stat-

utes give the county court unlimited discretion who they will appoint to make the settlement; nor can the objection that the settlement was not made until after the sheriff went out of office avail; for it was the legal duty, both of the county court and the sheriff, to have earlier made this settlement; and it was, likewise, not only the privilege, but the covenated duty of the securities, to see that the public money in the sheriff's hands was properly paid over.

Upon the whole case there is no doubt but these securities should be held responsible on this bond for their principals' defalcation, and the dismissal of the cause as to them was a radical error.

Wherefore, the judgment is reversed, with directions for further proceedings consistent herewith.