## Francis v. Sturgill.

(Decided March 19, 1915.)

### Appeal from Knott Circuit Court.

1. Elections—Vacancy Occurring in Party Ticket After Nomination at Primary Election—How Filled—Qualifications of Candidate Nominated by Party Committee to Fill Vacancy.—When a vacancy occurs in a party ticket after the election of its nominees at a primary election by the voters of the party, such vacancy may be filled by the governing authority of such party, but the nominee selected for such vacancy must possess the qualifications as to political belief and party affiliation, that under the provisions of the primary election law, would have entitled him to get his name on the party primary ballot as a candidate seeking its nomination for the office in question; and if such vacancy is filled by the governing authority of the party. by the selection of a nominee who does not possess the qualifications that would have entitled him to get on the primary ballot as a candidate seeking the nomination of the voters of such party, his nomination to fill the vacancy will be void.

2. Elections—Primary Election Law—Its Meaning.—It is necessarily the intent and meaning of the primary election law of this State, that a candidate who suffers defeat for a nomination after permitting his name to go on the ballot of one political party, shall not be permitted to have it placed on the ballot at the regular election as the nominee and under the device of another political party, opposing the party whose nomination he sought and was refused at the primary; to hold otherwise would utterly defeat the object designed in the enactment of the primary election law and destroy its efficacy.

3. Elections—Contested Election—Effect of Printing on Official Ballot at Regular Election Name of Contestant Illegally Selected by the County Committee to Fill Vacancy on Party Ticket.—Where, in an action contesting an election, it is conclusively established that the name of the contestant for the office in question had, following his defeat at a primary election as a candidate for nomination to the same office at the hands of the Democratic party, been printed on the official ballot for use in the regular election, as the nominee of the Republican party, by action of its county committee in selecting him to fill a vacancy on the party ticket, as its

nominee for the office, the illegality of such nomination rendered him ineligible to have his name go upon the official ballot at the regular election, under the device and as the nominee of the Republican party for such office. His name might have gone on the official ballot by petition, as a candidate for the office, but in such event it must have been placed under a device, other than a party device, indicated by the petition.

4. Elections—Eligibility to Hold Office—Eligibility to Nomination— Distinction Between.—There is a marked dstinction between eligibility to hold an office and eligibility for nomination to an office. Under the statute respecting contested election, eligibility (i. e. constitutional or statutory qualifications) of the contestant or contestee to hold the office cannot be inquired into; but the statute does not prevent inquiry as to the eligibility of either to nomination for the office in question. Where one is ineligible to hold an office to which he has been elected, he becomes a mere usurper and must be ousted by an action in the name of the Commonwealth, on the relation of the Attorney General or Commonwealth's Attorney. But where one contests an election, his ineligibility to become the candidate of a particular political party as its nominee, may be shown, as it goes to the means by which he procured his election to the office and not to the qualifications to hold it.

5. Elections—Prima Facie Right of Defeated Candidate—May Show That Opponent Was Not Legally Elected.—Notwithstanding his failure to establish his own right to the office, the contestant may show that the contestee was not legally elected thereto.

6. Elections—Grounds of Contest—Should Specify Names of Illegal Voters—New Grounds Should Not Be Added by Amendment.— Where, as in this election contest, the grounds relied on by the contestant are, that illegal votes were cast and counted for the contestee in certain designated precincts of the county, the names of the challenged voters in each of such precincts should be given in the petition. But where this is not done and the contestee also relies, by way of counter-contest, upon like grounds, as to the vote received and counted in certain precincts for contestant, but both parties, without objection to the pleadings, prepared the case for trial, neither of them should have been heard, after its submission, to raise any question as to the sufficiency of the other's pleadings. Moreover, after the submission of the case for judgment, the court should not have permitted the contestant to amend his petition, at any rate, to the extent of including, as it did, a voting precinct not mentioned in the original petition, and attacking the vote received for the contestee therein; nor should the court in its judgment have deducted from its count fourteen or any number of votes received by the contestee in that precinct.

A. J. MAY, BAILEY P. WOOTTON, HAZELRIGG & HAZELRIGG and JOE HALL for appellant.

J. D. SMITH, B. F. COMBS and O'REAR & WILLIAMS for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Reversing.

The appellant, Willie Francis, and the appellee, John Sturgill, were candidates for the office of County Court Clerk of Knott County at the November election, 1913, the former running as the nominee of the Democratic party and the latter claiming to be the nominee of the Republican party. Following the election the County Board of Election Commissioners, by a canvass of the returns, found and declared that appellant had received 960 votes and appellee 929 votes, giving the former a majority of thirty-one votes. The board then issued to appellant a certificate declaring him duly elected to the office in question; and thereafter, by executing the required bond and taking the necessary oath, he was inducted into the office and began the performance of the duties thereof. On November 13, 1913, this action was instituted by appellee in the Knott Circuit Court for the purpose of contesting appellant's right to the office and asserting his own election thereto. On the hearing the circuit court held that appellee had been elected to the office of County Court Clerk of Knott County by a majority of nine votes. From the judgment declaring that result this appeal is prosecuted.

It is insisted for appellant that the judgment of the circuit court should be reversed because that court erred: (1) In not holding appellee ineligible to have his name go on the ballot under the Republican device and as the nominee of that party for the office of clerk of the Knott County Court, at the November election, 1913; (2) in overruling appellant's exceptions to appellee's depositions; (3) in permitting the filing by appellee of the amended petition, appearing in the record; (4) in adjudging appellee elected to the office of clerk of the Knott County Court.

The second contention can be quickly disposed of. It makes complaint of the refusal of the circuit court to sustain appellant's exceptions to appellee's depositions and rests upon the ground that, as the taking of the depositions was not completed within thirty days after the issues were made up, they should have been suppressed; it being insisted that the requirements of Section 1596a, Sub-section 12, Kentucky Statutes, that the contestant's evidence in chief be so taken, is mandatory and must, therefore, be strictly obeyed. It is admitted by

appellant that appellee's evidence was not taken within the thirty days, nor was his own taken or completed within twenty days thereafter, because by agreement between them the time for taking depositions by each of them was extended; and it conclusively appears from the record that the agreement as to this extension of time was made and entered into at the request of appellant. This being true, he cannot complain that he was required by the court below to abide by the agreement. The presumption will be indulged that if the agreement had not been made appellee would have taken his proof within the thirty days required by the statute. Appellant frankly admits his desire to repudiate the agreement. In our opinion this he should not be permitted to do. He evidently desired the extension of time because it was necessary to enable him to take his proof and otherwise prepare his defense. But whatever may have been his motive in requesting and entering into the agreement, he should fairly abide by its terms. While the statute with respect to contested elections requires that they be speedily tried and disposed of, it does not require that the court shall ignore such an agreement between the parties to the contest as was admittedly made and carried out in this case. It is our conclusion, therefore, that appellant's second contention is wholly without merit.

The novelty and importance of the question raised by the first contention has commanded the careful consideration of the whole court.

The facts furnished by the record show that appellant and appellee are both Democrats and have always voted and affiliated with that party, the latter having as a Democrat repeatedly held office in Knott County, to which he was elected by Democratic votes; that they were rival candidates at the primary election held in Knott County in August, 1913, for the Democratic nomination for the office of clerk of the Knott County Court, in which primary appellant, by reason of his receiving a majority of the Democratic votes cast, secured the nomination and was duly returned and declared the nominee of the Democratic party for the office in question. At the same primary the Republicans of Knott County also nominated a candidate for the same office, who was duly returned and declared the Republican nominee. Notwithstanding his defeat by appellant for

the Democratic nomination, appellee determined to run against him for the office of county court clerk at the succeeding regular election in November; and with this end in view he, by some means not manifested by the record, procured the withdrawal of the Republican nominee for the office of county court clerk as a candidate and induced a majority of the Republican county committee to accept him as the candidate, declare him the nominee of the Republican party and cause his name to be placed on the ballot for the November election, under the Republican device, as the nominee of the Republican party for that office.

As appellee did not contest appellant's nomination, as the primary election law permitted him to do, the presumption will be indulged that he was fairly and legally defeated by appellant for the Democratic nomina-. tion; but no such presumption of fairness or legality can arise from the subsequent proceedings whereby the county Republican committee adopted appellee as the candidate of that party and caused his name to be placed under the Republican device on the ballot for the November election, as its nominee. Obviously, in thus procuring the placing of his name on the ballot as the candidate of that party, after being defeated in the primary as a candidate for the Democratic nomination for the office, appellee cannot claim to have gotten on the ballot in conformity to the provisions of the primary election law. In order to get his name on the primary ballot as a candidate for the Democratic nomination for the office of county clerk, he had to sign and deliver to the county clerk of Knott County a petition containing, among other things, the statements that he was then "a member of the Democratic party and affiliated with it and supported its nominees at the last regular election." Primary Election Law 1912, Section 6.

In addition, at the time appellee filed the foregoing petition with the county clerk there was filed with it, as required by Section 6 of the act, *supra,* a nominating petition, signed by certain Democratic electors of the county, recommending or nominating appellee as a candidate for the Democratic nomination for the office of county clerk, and declaring that they intended to support him therefor in the coming primary election.

In enacting the primary election law it was the manifest intent of the Legislature to relieve the voters of

the State of the corrupt and unfair methods which had so long obtained in the proceedings of political parties, particularly in the methods of making nominations, and to protect the voters of all political parties from the arbitrary domination of corrupt political bosses and designing politicians, of whatsoever party.  This being so, it is improbable of belief that the Legislature could have contemplated that one who seeks, in a primary election, as did appellee, the nomination of his party for office, against another of like political faith, would, after suffering defeat at the hands of his opponent, have the right at the regular election to seek election to the same office against such opponent by procuring, at the hands of the committee of an opposing party, the placing of his name on the ballot under its device as its nominee.  Such a method of securing a party nomination is not consonant with good faith or fair dealing, and its approval by us would defeat the paramount object of the primary law and destroy its efficacy.  It will not, we dare say, be contended that it would have been permissible for appellee to be a candidate at the primary for the nomination for county clerk at the hands both of the Democratic and Republican parties, or for him to have been a candidate at the November election under both the Republican and Democratic devices; how then could he rightfully be a candidate for a nomination at the hands of one of these parties at the primary, and run as the nominee and under the device of the other at the subsequent November election?

Section 5 of the Primary Act provides:

"A political party, within the meaning of this act, is an affiliation or organization of electors representing a political policy and having a constituted authority for its government and regulation, and which, at the last preceding election at which presidential electors were voted for, cast at least twenty per cent. of the total vote cast at said election in this State.  And such political party *shall nominate all* of its candidates for elective offices to be voted for at the next succeeding general election at the primary election herein provided for, and not otherwise:  *Provided,* That when a vacancy occurs after any nomination by death or otherwise, the governing authority of such party may provide for filling such vacancies and making such nominations.  And when such nominations have been so made the certifi-

cates of nomination shall be signed by the chairman and secretary of the governing authority of the party making the same, and shall be filed in the same manner as certificates of nomination at a primary nominating election. * * * No candidate nominated in any other manner than as provided in this act shall be entitled to the use of any word, device or figure in the description of his name or principle, which are used and have been adopted by any political party entitled under the provisions of this act to nominate its candidates in a primary election as herein provided.''

Did the fact that the Republican nominee for clerk of the Knott County Court, elected as such by the voters of the Republican party at the primary election in August, 1913, voluntarily resigned such nomination, or was induced to do so, confer upon the Republican county committee authority to fill the vacancy by electing or choosing appellee, then, theretofore and now, admittedly a Democrat, as the nominee of the Republican party for the office of county clerk and cause his name to be placed on the ballot under the Republican device, the log cabin, to be voted for as such nominee at the succeeding regular election in November? If it was permissible under the primary act for appellee, an avowed Democrat, to be thus given the Republican nomination, why was it necessary for the Republican actually nominated at the primary by the Republican party, and whose place he took on the ballot used in the regular election, in order to get his name on the primary ballot as a candidate for the Republican nomination, to file, as required by Section 6, the petition containing the statement that he was a member of the Republican party, affiliated with it and supported its nominees at the last regular election, and, in addition, file the supporting petition of a certain number of Republican electors of the county as further required by the same section?

It must necessarily be the meaning of the act that when a vacancy occurs in a party ticket after the election of its nominees at a primary by the voters of the party, such vacancy must be filled by the governing authority of such party by selecting therefor a nominee who possesses the qualifications as to political belief and party affiliation, that under the provisions of the primary act would have entitled him to get his name on the party primary ballot as a candidate seeking its nomination for

the office in question.  In Hager v. Robinson, 154 Ky., 489, in construing the primary election act in its several parts and as a whole, we said with respect to the qualifications it imposes upon candidates seeking party nominations:

"But when a voter offers himself, as did E. W. Robinson, as a candidate for nomination to an office at the hands of a political party with which he claims membership, proposing to have his claim to such nomination determined by the electors of the party at a primary election held under the primary election law of the State, he must submit himself to such reasonable regulations or tests as may be required of candidates by the law under which the primary election is held; and if one of these tests requires him to state, in order to get his name on his party's ballot, that he supported the nominees of the party of which he seeks a nomination at the last regular election, he must do so; and the disclosure, even if it should give the names of the persons for whom he voted, will not violate the provisions as to the secrecy of the ballot contained in Section 147, Constitution.  The tests to which the candidates are subjected by the primary election law of this State are contained in Section 6 of the act.  One of them is that he must have affiliated with the party whose nomination he seeks, and also have supported its nominees at the last regular election.  The words 'supported its nominees' do not necessarily mean that the candidate should have voted for such nominees.  Without voting at all, he may have given them actual and even active support, by advocating their claims, contributing to the legitimate expenses of their campaign, getting out the vote and in other proper ways, yet, by accident or unavoidable casualty have been prevented from attending the election.  Therefore, to require one to say that he supported the nominees of his party at a former election would not necessarily compel the admission on his part that he voted for them; for this reason, if no other were apparent, it cannot be said that the test here imposed invades the secrecy of the ballot.  In nearly all the States having a compulsory primary election law this and similar tests have been held to be reasonable.  *  *  *  *''

While every citizen entitled under the Constitution to vote may do so at a regular election for whomsoever he may prefer, no citizen can do so at a primary elec-

tion, for nominating party candidates for office, except by voting with the political party of which he is a member, according to the tests imposed by the law governing such primary, and for the candidate or candidates entitled to seek and receive its nomination. As said in Ladd v. Holmes, 40 Oregon, 167:

"So it is where party primary elections are held, such as are authorized and required by law, and under the supervision and inspection of public functionaries; it is not a violation of the Constitution that all electors are not permitted to vote at a particular party election. Electors of one party have no desire, unless prompted by sinister or evil motives, nor have they any inherent right, within or without the Constitution, to vote at some other party primary or election; hence no right or privilege of which they can complain has been entrenched upon or violated. We see no objection to the Legislature providing for party elections, and limiting the electoral privilege to party members. The exclusion of other party members from participating in such elections is not an infringement or denial of a constitutional right or privilege."

The principle announced in Ladd v. Holmes is supported by numerous other cases reviewed in Hager v. Robinson, *supra*, and in therein giving it our approval we said:

"All that is said by the authorities, *supra*, as to tests of party loyalty and party membership, applies with equal force to electors voting and candidates voted for in primary elections; and whether applied by legislative enactment to the one class or the other, or both, they are equally reasonable. It is to be remarked that the object of the present primary election law is to purify the politics of the State by preventing frauds and wrong doing in making nominations; and it will be in the interest of political parties and the welfare of all the citizens of the State to effectuate the salutary purpose designated by its enactment. Indeed, no political organization can be effective that does not command public confidence and respect; therefore, the integrity of all party nominations should be so manifest as to put them above being called in question. That the act manifests little concern for the independent voter is because of his resentment of party restraint and disavowal of party allegiance. It, however, neither

discredits his citizenship nor interferes with his rights, but leaves him free to support, at regular elections, the nominees of one of the political parties, or to vote for candidates without nominations. Moreover, the independent candidate can by petition, as provided by Section 1453, Kentucky Statutes, get his name on the ballot at a regular election under a device, other than that of a party, designated by the petition. That the act is in some respects in need of amendment, a cursory reading of it will demonstrate, but it cannot fairly be said of any of its provisions with respect to the qualifications it requires of those who would participate in or be nominated at the elections held thereunder, that they are unreasonable, or obnoxious to any provision of the State's Constitution.''

In State, *ex rel* McCarthy v. Moore, 87 Minn., 308, a provision of an election law which prohibits a candidate for nomination at a primary who was defeated from having his name printed on the official ballot, even as an independent candidate, for the same office at the subsequent regular election, was held to be a reasonable regulation, where there is another provision in the law requiring that a blank space be left in which voters may write the names of independent candidates. In the opinion it is in part said:

''Of necessity there must be upon such a ballot a regular order in which the names shall be placed; and other features incident to the procedure that tend to create incidental advantages to one candidate over another; but it would seem proper that any candidate who seeks the assistance of a primary election law to aid him in securing party support should be bound by the application of good faith and the dictates of fair play to which he has voluntarily subjected himself. It is said by this law to a candidate, 'if you prefer the advantages of a party nomination which is quite desirable you may seek it; but if the State prepares and prints your ballots and regulates nominations so as to secure the utmost freedom of choice among the members of your party, it does so upon the submission by you to the condition that if you are unsuccessful, it will not thereafter print your name upon the ballot to defeat your opponent;' and it could not be said, because this is refused, that it is an unreasonable condition, but rather an imposition of even-handed justice that would have been bestowed

upon his previous contestant, had the result been otherwise.''

The primary election law of this State does not, it is true, expressly provide that a candidate who suffers defeat for a nomination after permitting his name to go on the party ballot, shall not be permitted to have it placed on the ballot at the regular election as a candidate, whether of another party or as an independent, but its provisions by necessary implication mean and declare that his name in such state of case shall not be placed on the ballot for the regular election as the nominee and under the device of a party opposing the party whose nomination he sought and was refused at the primary; and to hold otherwise would utterly defeat the object designed in the enactment of the primary election law and make of it a farce.

It is our conclusion, therefore, that as the provisions of the primary election law would have excluded appellee, a member of the Democratic party, from procuring the placing of his name on the Republican ballot at the primary as a candidate for the nomination of that party to the office of county court clerk of Knott County, he was not, after his defeat in the primary for the Democratic nomination for the office in question, eligible to nomination therefor by the Republican committee of Knott County; and, therefore, that the action of the committee making him the nominee of the Republican party and causing his name to be placed on the ballot for the regular election as such, under the device of the Republican party, was without authority and void. We do not mean to be understood as holding that appellee's name could not have gone on the ballot for the regular election at all, because there is nothing in the provisions of the primary election law which would have prevented him from getting his name on the ballot by petition as an independent candidate for the office, under a device other than that of a political party.

It is, however, insisted for appellee that the question of eligibility cannot be raised as here attempted. Two cases are cited in support of this contention. One of these, Wilson v. Tye, 122 Ky., 508, was an election contest over the office of superintendent of common schools for Whitley County, to which the appellee, Miss Tye, according to the face of the returns, had been elected. The contest was instituted by the appellant, Wilson,

on the grounds that illegal ballots were used in the election and that appellee was not eligible to hold the office, because (1) she was a woman; (2) she was under twenty-four years of age. On the appeal of the case the judgment of the circuit court, which declared the appellee entitled to the office, was affirmed; the court holding that the contestant had not shown himself entitled to the office and that the present statute with reference to the trial of contested elections had deprived the circuit court of jurisdiction "to pass upon the eligibility of the contestee to the office in contest." Wilson v. Tye, 122 Ky., 508.

Pending the appeal Wilson instituted a second action, the object of which was to recover of Miss Tye the office of school superintendent upon the ground that she was a usurper; that, being ineligible to hold the office, her election thereto was void and appellant, as the incumbent of the office under a previous election, was entitled to hold it until a successor was duly elected. The circuit court dismissed his petition and on appeal the judgment was affirmed. Wilson v. Tye, 126 Ky., 34. The affirmance was rested on the ground that as appellant had failed to establish his right to the office he could not recover it of appellee; and, if she were a usurper, as alleged, that the Commonwealth's attorney of the judicial district including Whitley County, could, by an action in behalf of the Commonwealth, oust her from the office.

The second case relied on by appellee is that of Nichols v. Pennington, 118 S. W., 382. In this case there was a contest over the election of a school trustee, on the grounds that the election of the person whose right to the office was contested was secured through illegal votes; and that he was ineligible to hold the office because not a resident of the school district. The circuit court adjudged the contestant entitled to the office. On appeal, the judgment was reversed, it being held that neither ground of contest was tenable; and, as to the question of eligibility, the court adhered to the ruling in Wilson v. Tye, supra. When these two cases were decided the present primary election law had not been enacted and party nominations were not compelled to be made at a primary election.

Obviously, the word "eligibility" in the cases cited is used in the sense of constitutional or legal qualifica-

tion to *hold* office. Thus, in Wilson v. Tye (122 Ky., 508) it is in the opinion said:

"In our opinion, when the General Assembly enacted this statute, in lieu of the former statute with reference to the trial of contested elections, it was intended to relegate the question of eligibility or *legal qualifications* for the office to a different or other course of procedure."

Eligibility, in the sense above indicated, is not here involved. That appellee possesses the legal qualifications required by Section 100, Constitution, to enable him to hold the office of county court clerk, is not questioned; but he did not and does not possess the political or party qualifications that legally entitled him to receive the Republican nomination for that office, either by the voters of the Republican party at the primary, or at the hands of its committee after the primary, and thereby procure the printing of his name as its nominee, under its device, upon the official ballot used at the succeeding regular election. Here the question is not whether appellee is eligible (i. e., qualified) to hold the office, but whether he was qualified for or entitled to run or become a candidate for it as the nominee of the Republican party. As he did not possess the political or party qualifications entitling him to get on the primary ballot as a candidate for the Republican nomination, and could not have been voted for in the primary by the Republicans of Knott County, the Republican county committee were without power to make him the nominee of that party by having his name placed on the ballot for use in the regular election, under the Republican device, as its nominee; hence the nomination was void *ab initio,* for the conditions precedent to the procuring of the nomination, imposed by the primary election law, were never complied with.

It seems to be conceded by counsel for appellee that the primary election act contains no provision which could have been invoked by appellant, the nominee of an opposing party, to prevent the placing of appellee's name on the ballot for the regular election, under the device and as the nominee of the Republican party. This is manifestly true, for the summary, exclusive remedy provided by Section 27 of the act is for the benefit alone of candidates claiming to have been wronged by a refusal to place their names on the primary ballot.

The county clerk might have questioned appellee's right to have his name printed on the official ballot for the regular election under the Republican device and as the nominee of that party, by refusing to so print it; or a voter or voters of the Republican party might have interfered to prevent it; and in either event appellee, by mandamus or mandatory injunction, could have tested his right to get on the official ballot as the Republican nominee. The remedy provided by Section 27 of the act, *supra*, only applies where there is interference with the right to get on the primary ballot as a candidate for a party nomination; and in Hager v. Robinson, *supra*, in construing this section, we said:

"It will be observed that 'only candidates may institute proceedings under this act;' if they do so and the relief asked for is denied by the court or judge, the orders or judgment of the court or judge determining the matter 'shall be final and not appealable.' In other words, this section compels the candidate to have determined, by the method or procedure therein declared, whether a wrong has been done him in refusing his name a place on his party's ballot in the primary, yet refuses him or the alleged wrongdoer the right of appeal, however much either may be dissatisfied with the judgment rendered by the court or judge. To say that this is unwise, not to say unjust, legislation, does not make it unconstitutional, or even unreasonable, as the right of appeal is not an inherent or constitutional right, but a right which the Legislature in its discretion may confer or withhold. Turner v. Commonwealth, 89 Ky., 78; Vinegar v. Commonwealth, 104 Ky., 106."

It is insisted for appellee that there is no provision of the law respecting regular elections that would have allowed appellant, the nominee of a different political party, to interfere to prevent the placing of his name on the official ballot as the Republican nominee. Whether this is so it is unnecessary to decide, as, in our opinion, when appellant's election to the office in question is contested by appellee, he has the right to challenge the legality of the means whereby appellee procured the placing of his name on the ballot.

There is a marked difference between one's being ineligible to hold an office and ineligible to run for it as the nominee of a particular party. Eligibility to hold the office must depend upon whether the candidate claim-

ing to have been elected to it possesses the constitutional qualifications, if the office be one created by the Constitution; or the statutory qualifications, if it be one created by statute, to hold it. But, whether one is eligible to run for office as the nominee of a party by getting his name on the ballot at a regular election, under its device, depends upon whether he possesses the political qualifications and party affiliation prescribed by the primary election law entitling him to become its nominee; and this is true whether his nomination is secured through the voters of the party in a primary election, or its committee in filling a vacancy. If ineligible to hold an office, he becomes, when inducted into it, a usurper, and the law provides a distinct and exclusive remedy for his removal, which must be pursued. Therefore, in a contest for the office his opponent, whether his connection with the case is as contestant or contestee, will not be permitted to raise the question of his ineligibility (i. e., constitutional or statutory qualifications) to hold the office. But the opponent may show that the methods or means by which he secured the election were fraudulent or otherwise illegal. If, therefore, the votes by which he claims to have been elected to the office in contest were obtained by his fraudulently, or otherwise illegally, procuring the placing of his name on the ballot under the device of a political party as its nominee, when in fact he was legally disqualified, and, by reason thereof, ineligible to receive its nomination, these facts may be relied on and shown in proof to defeat his claim to the office; not because they affect his eligibility to hold the office, but because they relate to and show the illegality of the means by which he claims to have been elected to it.

The Republican party of Knott County had the right to refrain from nominating a candidate for county court clerk, if it saw fit; but, in that event, the place on the official ballot that would have been occupied by the name of its nominee for that office, had it made a nomination, must have remained vacant. It could not have been filled by the name of a candidate nominated by petition signed by voters of the Republican party; for the name of a candidate so nominated cannot, under the provisions of the present primary or general election law, go on the ballot under the device of any political party, but must be printed under a device, other than

that of a party, which may be indicated by the petition. Where, however, a vacancy on a party ticket occurs after its party nominations have been made at a primary election, while the governing authority of such party may fill the vacancy, it must, as already stated, do so with the name of a nominee possessing such political qualifications and party affiliation as would have entitled him to become a candidate in the primary for the party's nomination to the office.

Political party organizations are maintained as aids to good government, and if they accomplish their mission in this State, there must be a reasonable compliance with the requirements of the primary election statute; otherwise, electors would be deceived and defrauded of their right to vote for candidates of their own or their party's choice. To permit appellee to profit by the nomination he secured, would be an injustice to the voters of the Republican party, as well as all other voters of Knott County, whether of other political parties or independents. The fact that the subterfuge by which his name was printed on the ballot, under the Republican device, and as its nominee, might have been prevented by the members of that party, is beside the question. Whether they were informed of it in time to have prevented it does not appear. At any rate, its illegality can be raised by appellant in the contest instituted by appellee for the office, on the ground that it destroyed the validity of the votes cast for the latter· at the election, as it enabled him to practice a deception on the Republican voters of Knott County and obtain their votes under the false pretense that he was a Republican; whereas, he was, when posing as their nominee, has been at all times since, and is now, professedly a Democrat.

In our opinion appellee did not have the right to have his name go on the ballot as the Republican nominee, for which reason he was not eligible to be voted for at the election and could not properly be adjudged entitled to the office involved, even though it were made to appear that he received a majority of the votes cast.

Although the conclusion last expressed adversely disposes of appellee's claim to the office in question, it nevertheless remains to be determined whether appellant was elected thereto. As said by Judge Cooley in his "Constitutional Limitations" (4th Ed.), page 787:

"The questions involved in every case are: First, has there been an election? and, second, was the party who has taken possession of the office the successful candidate at such election, by having received a majority of the legal votes cast?"

A defeated candidate has the *prima facie* right to contest the election of his successful opponent. To recover the office he must show his own election to it; but though he fail in this, if he prove that the contestee did not receive a majority of the votes legally cast at the election, he may prevent him from taking the office; or, "in case it shall appear from an inspection of the whole record that there has been such fraud, intimidation, bribery or violence in the conduct of the election that neither contestant nor contestee can be adjudged to have been fairly elected, the circuit court, subject to revision by appeal, or the Court of Appeals finally may adjudge that there has been no election. In such case the office shall be deemed vacant, with the same legal effect as if the person elected had refused to qualify." Section 1596a, Sub-section 12, Kentucky Statutes.

So, notwithstanding appellee's failure to show that he was elected to the office of county court clerk of Knott County, his institution of the present contest compels us to decide, upon the record before us, whether appellant was legally elected to the office. If appellant's election to the office in question cannot be thus attacked, how and by whom can it be challenged? A court could, at the suit of the State by the Commonwealth's attorney of the district as relator, oust him from the office if it were made to appear that he is a mere usurper; but in such action his ineligibility to hold the office, and not the illegality of his election to it, would constitute the ground for his removal. But in a contest his election to the office may be questioned, and if it be made to appear that he was not legally elected thereto, the court may, by its judgment, compel him to surrender it.

But before considering the grounds of contest upon which appellant's election to the office in question is challenged, we will pass on his third contention, which makes complaint of the ruling of the circuit court in permitting the filing of appellee's amended petition, as its decision at this juncture will clear the way for a better understanding of the questions affecting the election.

Appellee's petition instituting this contest was filed November 13, 1913. The grounds alleged were: (1) Fraud on the part of appellant and his friends in procuring, through two of the election commissioners, and without notice to the third one, the substitution in various precincts of election officers in lieu of those previously appointed by all three of the election commissioners. (2) Bribery of voters by appellant and his friends in various precincts of the county. (3) Fraud or error upon the part of the election officers in various precincts, in allowing voters to mark their ballots upon the table, without first administering to them the oath required by law. (4) Fraud or error on the part of such election officers in receiving and counting for the Democratic ticket, including appellant, ballots which were exposed by those who used them in voting. (5) Receiving and counting for the Democratic ticket, including appellant, numerous ballots cast by persons who were not legal voters. By the averments of the petition the above enumerated grounds of contest were confined to the following voting precincts of the county, viz: No. 1 (Hindman), No. 2 (Upper Carr), No. 5 (Lower Troublesome), No. 6 (Lower Carr), and No. 7 (Caney). The returns from the following precincts of the county were not assailed by the petition nor the votes cast therein contested, viz: No. 3 (Beaver), No. 4 (Quicksand), No. 8 (Jones Fork), No. 9 (Ball).

At rule day, on December 1, 1913, appellant filed in the office of the clerk of the Knott Circuit Court a motion to strike from the petition paragraph No. 2, a motion to make more specific and certain the averments of the petition, and, without waiving either of the foregoing motions, at the same time filed answer.

The answer contains a traverse and attacks appellee's right to become the candidate and nominee of the Republican party, or to have his name on the official ballot under its device; and, in addition, alleges that in precinct No. 8, known as Jones Fork, not less than seventy of the 145 votes shown by the return of the election officers to have been received and counted for appellee, were illegally and wrongfully counted and certified for him; that twenty-five of the seventy votes referred to were not legal voters in that precinct; an equal number were allowed to vote by marking their ballots openly on the table without first having been sworn; the votes of

the remainder of the seventy were purchased and bribed by appellee or his supporters; and that appellant received in that precinct, and was entitled to have had counted and certified for him, ninety-eight votes, and appellee only seventy-five. It was also alleged that in pricinct No. 9, known as Ball precinct, there were counted and certified 121 votes for appellee and only 78 votes for appellant; that at least fifty-one of the 121 votes thus counted and certified for appellee were illegally cast and counted, half of them not being legal voters in the precinct and the other half having been illegally permitted to mark their ballots on the table in the presence of the election officers, without first having been sworn; and that upon a correct count and certification of the votes of that precinct appellant was entitled to and would have received 129 and appellee 70 votes. It was further alleged in the answer that throughout the county appellee and his father expended and caused to be expended large sums of money in the bribery of voters and purchase of votes for appellee, but only Jones Fork and Ball precincts were specifically named as the precincts in which such bribery was committed.

The proof in the case was taken between December 1st and the succeeding term of the Knott Circuit Court, which began on the second Monday in March, 1914. During that term of the court neither appellant nor appellee requested of the court a ruling on the motions which had been filed by appellant December 1, 1913, but on the motion of the latter the case was submitted for trial and judgment at the March term. For some reason, however, perhaps because there was not time at that term to try it, the case went over to the next term, which began the second Monday in July, 1914, and during that term it was tried and disposed of. At no time during the July term, either before the trial of the case or while it was in progress, did appellant or appellee ask the court to pass on the previous motions of appellant to strike from the petition and make it more specific. On the 21st of July, however, apparently after the pleadings and evidence had been read and the case argued by counsel, but before the court announced or entered its judgment, appellee was permitted, over the objection of appellant, to file the amended petition.

Whether the filing of the amended petition resulted from the court's discovery at that time of the motion to

make the petition more specific, does not appear from the record. At any rate, the record fails to show that he was then asked to pass on the motion. The record does, however, contain the following order:

"Comes the plaintiff, tendered an offer to file amended petition setting up the names of voters in compliance to defendant's motion to require them to make more specific and certain the allegations of their petition; to which filing the defendant objects, the court being advised permits same to be filed, to which the defendant excepted and still excepts."

The opening statement of the amended petition is: "The contestant, John Sturgill, pursuant to the ruling of the court herein, amends his original petition to make same more definite and specific."

The amended petition presents for the first time the names of the voters whose votes are alleged to have been illegally received and counted for appellant in the following precincts, viz., precincts Nos. 1, 2, 5, 6, 7. It will be recalled that the vote in the above precincts was assailed in the original petition without naming the voters. In addition to the foregoing names, however, the amended petition sets forth the names of fourteen voters in precinct No. 9 (Ball), which it alleges were also illegally received, counted and certified for appellee; whereas, no attack was made in the original petition on the vote of precinct No. 9, or on that of precincts No. 3 (Beaver), No. 4 (Quicksand), or No. 8 (Jones Fork).

It is patent that the amended petition in attacking appellant's vote in precinct No. 9 (Ball), sets up a new or additional ground of contest, not relied on in the original petition. This should not have been allowed. In a case of this character it is ordinarily admissible for the contestant or contestee to amend his petition or answer by making more definite and specific the grounds of contest or counter-contest set out therein, but not to set up new or additional grounds. Indeed, this is expressly prohibited by Section 1596a, Subsection 12, Kentucky Statutes, which declares as to the petition that it "shall state the grounds of the contest relied on, and no other grounds shall afterwards be relied upon." This is also true as to grounds of counter-contest made by the answer of the contestee. Wilson, etc. v. Hines, etc., 99 Ky., 221; Adams v. Roberts, 119 Ky., 364; Weller v. Muenninghoff, 155 Ky., 77; Butler v. Roberson, 158 Ky.,

101; Botts v. Horton, 158 Ky., 11; Clark v. Robinson, 159 Ky., 25.

It may happen, however, that the circumstances attending the offer to file an amended petition in a contested election case, though for the sole purpose of making more specific the grounds of contest contained in the original petition, would be such as to make the permission to file it an abuse of discretion on the part of the court. In our opinion such is the situation here presented. In the first place, appellant's motion to require appellee to make his petition more specific, is not itself specific, for it does not indicate in what respects the petition is indefinite or in what particulars it should be made more specific. In the second place, as appellant failed at the March term, 1914, of the circuit court, or at any time thereafter before the trial of the case, to call up the motion and ask the court to take action upon it, such failure constituted a waiver or abandonment of the motion by him; and as appellee, though advised of the pendency of the motion from the time it was made, did not see fit to ask action of the court upon it, the presumption should be indulged that he consented to the waiver of the motion or was content to rest his case upon the grounds of contest as stated in the petition.

Something may have occurred during the trial to make appellee apprehensive as to the sufficiency of the petition; and, if so, appellant's neglected motion merely furnished a pretext for the offer to file the amendment. Under the circumstances, the court should not have allowed it to be filed. Without it the parties were on an equal footing. Neither had set out in his pleading the names of any of the persons of whose votes he complained. If the petition was insufficient by reason of the indefiniteness of the grounds of contest upon which appellee rested his case, the answer was equally so with respect to the grounds of counter-contest relied on by appellant. The proof was taken and the case otherwise prepared by the parties and submitted, with the expectation that it would be tried upon the petition, answer and reply as framed and filed by them, respectively. If they were willing to try the case as they had prepared it, neither of them should have been required by the court, after its submission, to question the sufficiency of the pleadings, or allowed to amend them. We had before us in Lunsford v. Culton, 15 R., 504, a state of case similar to that here presented. In dealing with it we said:

"The names of the illegal voters are not given, or the reasons why these votes were illegal, and it would seem that this statement would scarcely apprise the contestee of the grounds of contest, so that he might be prepared to meet them. The contestant, in his reply to the causes of contest, sets up similar charges, and as indefinite as those made by the contestee. * * * The testimony before the contesting board was not objected to, nor any motion made asking that the notice be made more certain and definite, and it was not until the case reached the circuit court that a motion to quash the notice was made, and no motion in fact made in that court to make this statement more definite. * * * A notice of the contest because of illegal votes being cast for the one party or the other, while it should be required to be made more definite, if objection is made in proper time, is sufficient if parties see proper to make an issue without objection and proceed to investigate the case."

Another analagous case is that of Weller v. Muenninghoff, 155 Ky., 77, and we in that case said:

"When an election is over and the certificate has been issued to the successful party, no person who was a candidate, and who cannot point out some certain and substantial grounds of contest, should be allowed to harass and annoy the successful candidate by a law suit or put him to the expense and trouble of defending a case without knowing what charges he must be expected to meet and answer. Of course, if both parties, without raising any objection, are willing to try the issues on an indefinite and insufficient notice or other pleading, neither of them will be heard after the case has been submitted for judgment to raise a question as to the sufficiency of the notice or pleading. * * *"

For the reasons given, and because of its setting forth new grounds of contest, in addition to making more specific those alleged in the original petition, the ruling of the circuit court in permitting the amended petition to be filed was error.

We now come to the consideration of the final question, did appellant receive a majority of the legal votes cast at the election? While there is some evidence of bribery of voters at the election, in which the friends of both candidates engaged, but appellant did not personally participate, we concur in the conclusion of the circuit court that bribery was not so well established as to

affect the result of the election or furnish cause for declaring it void. There is also considerable evidence in the record of illegal voting, but not nearly so much of it as alleged in the petition and answer. Other grounds relied on were not sustained.

We do not, however, concur in the circuit court's conclusion as to the result of the election. It appears from the record that according to the certificate of the county election commissioners appellant received 960 and appellee 929 votes. It appears from the judgment appealed from that the circuit court deducted from the total vote accredited to appellant by the certificate of election, fifty-three votes, which he found to be illegal, either because of the ballots having been marked by or for the voters upon a table without their being sworn by the election officers as to their inability to mark them without assistance, or that they were exposed by the voters after being marked by them. These votes were deducted in the following precincts: Three from precinct No. 1 (Hindman), seven from No. 2 (Upper Carr), three from No. 5 (Lower Troublesome), eight from No. 6 (Lower Carr), eighteen from No. 7 (Caney), fourteen from No. 9 (Ball).

A careful analysis of the evidence convinces us that it is very indefinite as to the illegality of some of the votes thus deducted by the court, but, for the purposes of this case, we will concede that there was evidence conducing to show that thirty-nine of them were illegally cast and counted. It is manifest, however, that the fourteen votes in precinct No. 9 (Ball), were erroneously deducted from appellant's vote, for, as previously stated, it was not alleged in the petition or made a ground of contest, that appellant had received any illegal votes in that precinct; and though such claim was attempted to be made by the amended petition, it could not be so done. So, crediting appellant with these fourteen votes in the Ball precinct, there will be left but thirty-nine votes to be taken from the 960 received by him, which will leave him a total of 921 votes.

It further appears from the judgment that thirteen votes were deducted by the circuit court from the 929 votes certified as cast for appellee. These deductions were properly made. Of these thirteen votes four were taken from precinct No. 8 (Jones Fork), and nine from precinct No. 9 (Ball). The evidence showed many addi-

tional illegal votes cast and counted for appellee in various other precincts of the county, but as the answer of appellant confined appellee's illegal votes to the two precincts mentioned, in which the thirteen votes were deducted, the illegal votes received by appellee in the other precincts could not properly be deducted from the entire vote received by him. Subtracting the thirteen votes thus taken from appellee from the 929 votes counted and certified for him left him a total of 916 votes, which, subtracted from the total of 921 we allow appellant, will leave the latter a majority of five votes, which entitled him to be declared elected to the office of county court clerk of Knott County, and the court should have so adjudged.

For the reasons indicated in the opinion the judgment of the circuit court is reversed and the cause remanded, with directions to that court to set it aside and enter in lieu thereof a judgment declaring appellant duly elected to the office in question.

Whole court sitting.