Michael O. McDONALD et al., Appellants,

v.

Richard A. REVELL, Appellee.

Court of Appeals of Kentucky.

Jan. 14, 1972.

Frank A. Logan, Kenny Grantz, J. Bruce Miller, Louisville, for appellants.

Cecil Davenport, Richard C. Porter, Jr., J. Leonard Walker, Louisville, for appellee.

CULLEN, Commissioner.

This is an appeal from the judgment in an election contest case, which held that neither candidate was entitled to the office in question.

Richard A. Revell and Michael O. McDonald were candidates at the November 1971 election for the unexpired term, extending to January 1976, of the office of Judge of the Jefferson Circuit Court, Common Pleas Branch, First Division. Revell was holding the office by virtue of his appointment on April 15, 1971, to fill a vacancy caused by the resignation of the previous incumbent. Since that vacancy occurred more than 90 days before the 1971 election, it was required by Section 152 of the Kentucky Constitution that an election be held to fill the vacancy for the remainder of the unexpired term, Revell being entitled to continue to hold the office until the winner of the election received his certificate of election and qualified. See Jones v. Sizemore, 117 Ky. 810, 79 S.W. 229; Brown v. Rose, 233 Ky. 549, 26 S.W.2d 503.

At the November election Revell's name appeared on the separate judicial ballot, un-

der KRS 118.173, under the emblem of the Republican Party, he having received that party's nomination in the primary election. McDonald's name appeared twice; under the emblem of the Democratic Party, whose nomination he had received in the primary, and under the emblem of the American Party, by whom he had been selected under KRS 118.090(4) to fill a vacancy in its nomination caused by the resignation of its original nominee. The canvass of the votes showed that Revell had received a total of 36,096 votes, whereas McDonald had received 33,581 votes under the Democratic emblem and 4,779 votes under the American Party emblem. This gave McDonald a majority of 2,264 votes.

Revell brought the instant action to contest the election, asserting that McDonald's nomination by the American Party was invalid, wherefore the votes cast for him under the American Party emblem could not be counted for him, with the result that Revell should be adjudged the winner of the election. Revell joined as defendants (in addition to McDonald) the county board of election commissioners and the county court clerk, and asked that the board of election commissioners, which had not yet issued a certificate of election to McDonald, be enjoined from issuing such a certificate; also that McDonald be enjoined from assuming the office. A restraining order containing such injunctive provisions was issued.[1] A motion by the defendants to dissolve the restraining order, and a motion by the plaintiff for a temporary injunction, were made, and the hearing on those motions was treated by the parties and the court as a trial on the merits.

The circuit court concluded as a matter of law that McDonald's nomination by the American Party was not valid and that the votes cast for him under the party's emblem could not be counted for him. How-

ever, the court did not adjudge Revell to be the winner, but declared that there was no election (apparently on the basis that Revell could not be adjudged the winner because he did not receive a majority of the total votes that were cast). The judgment permanently enjoined the board of election commissioners from issuing a certificate of election.

McDonald and the board of election commissioners appealed from the judgment, and executed a supersedeas bond. (It does not appear from the record whether McDonald, on the basis of the supersedeas, made any effort to secure a certificate of election.) Revell also undertook an appeal, to the extent of filing a notice of appeal, but he did not perfect it.[2]

The only question argued on this appeal (being the one perfected by McDonald and the board of election commissioners) is whether McDonald's nomination by the American Party was valid. The circuit court's opinion that the nomination was not valid was based on events that occurred in relation to the primary election. Those events were as hereinafter stated.

In the primary election Revell and McDonald each had "cross-filed" under the nonpartisan judicial nomination law, KRS 119.070, seeking both the Democratic and the Republican nominations. In addition, one Sandy Paniello, who prior to the primary had been nominated as the candidate of the American Party, pursuant to KRS 118.090 and 118.130(3), likewise had sought both the Democratic and Republican nominations. As hereinbefore stated, McDonald won the Democratic nomination and Revell the Republican nomination.

After the primary Paniello resigned the American Party nomination. In September the governing authority of that party,

1. No issue is raised here as to whether injunctive relief properly was invoked.

2. Two days after the judgment was entered Revell resigned the office in issue and accepted appointment to fill a vacancy in another Jefferson County circuit judgeship. One Richard Oldham was appointed by the Governor to fill what purported to be the vacancy in the office here in issue.

acting under KRS 118.090(4), undertook to nominate McDonald to fill the vacancy in its candidacy. The circuit court was of the opinion that McDonald was disqualified for that nomination by reason of the nature and results of his participation in the primary.

The circuit court's opinion was that under the authority of Francis v. Sturgill, 163 Ky. 650, 174 S.W. 753, and Stephenson v. Riddle, Ky., 371 S.W.2d 871, McDonald could not legally be selected to fill the vacancy in the American Party's nomination "because he had been defeated in the Republican Primary by Revell" (quotation from circuit court's conclusions of law). It is our opinion that the cases relied on do not stand for such a proposition.

In *Sturgill,* after a candidate had sought, and lost, the Democratic primary nomination for county court clerk, he was selected by the Republican Party to fill a vacancy in its nomination caused by the resignation of the candidate who had won the Republican primary. This court held that the selection was invalid, because "the provisions of the primary election law would have excluded appellee, a member of the Democratic party, from procuring the placing of his name on the Republican ballot at the primary as a candidate for the nomination of the party * * *." The court pointed out that in order for the appellee to get his name on the primary ballot as a candidate for the Republican nomination it would have been necessary for him to file a statement, with a supporting petition, that he was a member of the Republican Party and had supported its nominees at the last regular election. See KRS 119.050. It was the fact that he could not thus qualify as a Republican, rather than the fact of his *defeat* in the Democratic primary, that precluded his nomination to fill the vacancy in the Republican candidacy. Under the *Sturgill* rationale, the Republicans could not have nominated the *winner* of the Democratic primary (which conceivably they might want to do to help defeat an unwanted independent candidate). So *Sturgill* is not authority for making *defeat* in the primary a basis for disqualification for a nomination.

In *Riddle,* two circuit judgeships in Pike County were involved. F. Pierce Keesee sought the Democratic nomination for judge of Division No. 2. He did not cross-file for the Republican nomination, but presented himself at the primary as a straight-out Democrat. He lost the nomination. Subsequently, the Republican primary nominee for judge of Division No. 1 resigned the nomination, and the governing authorities of the Republican Party chose Keesee to fill that nomination. This court held that the nomination of Keesee was invalid, being contrary to the spirit and intent of the nonpartisan judicial nomination statute. Again, the fact that Keesee had been *defeated* in the primary was not a controlling factor, because he had not been defeated for the office for which the Republicans later nominated him. The controlling consideration was that Keesee had presented himself to the voters in the primary as a Democrat pure and simple; which fact, in the opinion of the court, made it not consonant with good faith or fair dealing, or with the purpose of the judicial nomination law, for the Republican Party to foster him as their candidate. Under the rationale of *Riddle* it would appear that the Republican Party could not, *by action of its governing authorities* as distinguished from the primary action of its voters, designate as a nominee for judicial office an avowed Democrat, regardless of whether the latter had participated in the primary. This means that while a person can seek and obtain a major party's primary nomination for a judicial office without being a member of that party or even when he is a full-fledged member of the opposing party, he cannot be chosen *by action of the governing authorities* of a major party as its candidate if he has identified himself to the public as an avowed member of the opposing major party.

For the reasons hereinabove stated, the fact alone that McDonald was *defeated* for

the Republican nomination in the primary would not be a basis for precluding his selection by the American Party to fill a vacancy in its nomination. So if he is to be precluded from that selection it must be on some other basis.

■ There is nothing in *Sturgill* to bar McDonald's selection by the American Party because, under KRS 118.090, he could have been the *original* nominee of that party though he was not affiliated with that party and had not previously supported its nominees, and though he sought in addition the primary nomination of one or both of the major parties. See Mann v. Cornett, Ky., 445 S.W.2d 853.

Likewise, *Riddle* does not furnish a basis for precluding the American Party's selection of McDonald to fill the vacancy in its nomination. The situation in the instant case differs from that in *Riddle* in two major respects. The first distinction is that in *Riddle*, Keesee had presented himself to the voters in the primary strictly as a Democrat, and his subsequent nomination by the Republican Party was calculated to create internal strife in the Democratic Party. In the instant case McDonald did not undertake to identify himself with either party in the primary, but sought the nominations of both major parties, and there is nothing in the circumstances to suggest that his subsequent nomination by the American Party would have any effect on the internal peace of the Republican Party. As a matter of fact, if McDonald could be considered to have had any party identification to the primary voters it probably was as a Democrat, in view of the fact that he won that party's nomination. The second distinction is that in *Riddle*, Keesee would not have been on the regular election ballot at all, had he not been chosen to fill

the vacancy in the Republican nomination, whereas in the instant case McDonald already was in the race for the regular election, as the Democratic nominee, before he was given the additional nomination by the American Party.

We can find no basis in the letter of KRS 118.090 or in the spirit of the election laws for holding invalid McDonald's selection by the American Party. Therefore it is our opinion that he is entitled to have counted for him the votes cast for him under the label of the American Party, which will make him the winner of the election.

Upon the entry of judgment by the circuit court in conformity with this opinion McDonald will be entitled to a certificate of election, and upon thereafter qualifying he will be entitled to the office.[3]

The judgment is reversed with directions for entry of a judgment in conformity with this opinion.

EDWARD P. HILL, Jr., MILLIKEN, OSBORNE, PALMORE and REED, JJ., concurring, except that HILL, OSBORNE and REED, JJ., are of the opinion that Stephenson v. Riddle, Ky., 371 S.W.2d 871, should be overruled.

NEIKIRK, J., dissenting.

STEINFELD, C. J., not sitting.

NEIKIRK, Judge (dissenting).

Under the authority of Stephenson v. Riddle, Ky., 371 S.W.2d 871 (1963), the judgment of the Jefferson Circuit Court should be affirmed. The majority opinion, in attempting to distinguish Riddle, so strips the holding as to render Riddle a nullity.

---

3. McDonald has made no issue on this appeal with respect to his having been deprived of a certificate of election, by injunctive process, pending this litigation. Cf. Harrison v. Stroud, 129 Ky. 193, 110 S.W. 828; Doss v. Howard, 180 Ky. 413, 202 S.W. 888; Cheatham v. Williams,

212 Ky. 73, 278 S.W. 139; Coleman v. Goff, 239 Ky. 479, 39 S.W.2d 1003; 43 C.J.S. Injunctions § 115, p. 645. Nor is there any showing that after the judgment containing the final injunction was superseded McDonald sought to obtain a certificate.

If the majority of the court considers Riddle to be so void of good features and so necessary to explain, it should be overruled; and the opinion in the instant case should set forth in clear pronouncement the posture of this court in applying our election statutes to facts such as presented here. In Riddle, we said:

"We think the controlling question is whether KRS 119.020(3) authorized the designation of Keesee to fill the vacancy in the Republican nomination. The statute says:

'If a vacancy occurs in a nomination made by primary, after the primary and before the ballots are printed for the regular election, the governing authority of the party may provide for filling the vacancy. * * * *'

"The statute does not, in terms, exclude anyone, by reason of lack of party membership or otherwise, from being named to fill a vacancy in a nomination. However, in Francis v. Sturgill, 163 Ky. 650, 174 S.W. 753, it was held that this statute must be construed in the light of the basic purposes and objects of the primary election law, and as so construed the statute did not permit a vacancy in a nomination to be filled by a person who had been a candidate at the primary for a nomination by the other party.

"Keesee maintains that the reasoning of the Sturgill case is not applicable to a judicial office, because under KRS 119.070 a person may seek and receive a party nomination without his being a member or adherent of that party, and even though he is an avowed supporter of the other party. In our opinion, however, there is more reason to apply the Sturgill reasoning to a judicial office. The plain purpose of the nonpartisan (or bipartisan) judicial nomination statute, KRS 119.070, is to minimize partisan political influences in judicial elections. To permit a defeated candidate for one party's nomination to be picked up and nominated by the other party to fill a vacancy in its nomination would magnify the partisan political influences. It would permit a party to use the nomination for a judicial office as a divisive stratagem in the races for other offices, by creating an internecine struggle in the ranks of the other party.

"As said in the Sturgill case, 174 S.W. 756, 757, the method here employed of making a nomination 'is not consonant with good faith or fair dealing' and to approve it 'would utterly defeat the object designed in the enactment of the primary election law and make of it a farce.' "

In Riddle, we clearly held that our election statutes do not permit to be accomplished what the majority in the instant case says now can be done. The American Party candidate in the primary was defeated by the Republican and Democratic candidates. To permit the nominee of the American Party to resign and the governing authority of that party to nominate as its candidate in the general election one of the successful nominees of one of the other parties, violates the true spirit and intention of our election statutes. Under our "judicial ballot" a person seeking judicial office may seek nomination under as many parties as he chooses. Having chosen his party or parties, to permit in the case of a vacancy such a candidate to be nominated by the governing authorities of any of the other parties is repugnant to my concept of good faith and fair dealing and is not in keeping with the intent of our statutes dealing with such elections. This court has so held in Riddle. I feel constrained to follow Riddle as long as it remains the judicial determination of this court. The free-swinging attempt of the majority of the court to distinguish the facts in Riddle from the facts in the instant case falls far short of conclusive persuasion.

I would affirm the judgment of the Jefferson Circuit Court.