CASE 43—CONTEST BETWEEN JAMES P. ADAMS AND JAMES K. ROB-
ERTS OVER THE OFFICE OF COMMONWEALTH'S ATTORNEY FOR THE
TWENTY-THIRD JUDICIAL DISTRICT—DEC. 17.

# Adams v. Roberts.

APPEAL FROM LEE CIRCUIT COURT.—J. SMITH HAYS, SPECIAL JUDGE.

JUDGMENT FOR ROBERTS, CONTESTEE. THE CONTESTANT, ADAMS, AP-
PEALS. REVERSED.

ELECTIONS—CONTEST—PETITION—SUFFICIENCY—AMENDMENT OF PE-
TITION—COMMONWEALTH'S ATTORNEY—ELIGIBILITY TO OFFICE—
CHANGE OF DISTRICT.

1. Under Kentucky Statutes 1903, section 1591, concerning pro-
ceedings to prevent fraud in elections, and providing that
the chapter shall be liberally construed so as to prevent any
evasion of the prohibitions and penalties by any shift or de-
vice, a petition in an election contest on the ground of fraud,
etc., which necessarily imports that the fraud entered into the
result as certified to the State board, was sufficient though it
fails to charge such fact in terms.

2. Kentucky Statutes, 1903, section 1596a, subsection 12, provides
that in an election contest a reply may be filed, and that no
subsequent pleading shall be allowed. HELD, that where any-
thing occurs after the commencement of a contest and after
the time of pleadings, which is a relevant and necessary fact
in aid of the original grounds, it may be asserted as an amend-
ment of the petition, though after the reply.

3. Constitution, section 100, provides that no person shall be eligi-
ble to the office of Commonwealth's attorney who has not re-
sided in the county and district in which he is a candidate one
year. Section 132 empowers the General Assembly to establish
additional judicial districts. After the election of an attorney
for the Twenty-third Judicial District, the county of M., in
which he resided, was made part of a new district by Acts 1904,
p. 125, c. 51. HELD, that the change in the district did not dis-
qualify him for the office, since, if the Constitution required a
continuous residence, failing which an abandonment would fol-
low, the officer might change his residence to a place within the
district, and the statute could not deprive him of his office with-

out violating the Constitution, which protects an officer from removal by the Legislature other than by impeachment.

4. Though the Legislature is given power to abolish the office of Commonwealth's attorney, it can not abolish the tenure of any rightful incumbent of the office.

5. Under Kentucky Statutes, 1903, section 1596a, subsection 12, limiting an election contest to a determination as to which candidate was elected, the question whether the eligibility of the one elected has been affected by a subsequent event can not be considered.

JAMES ANDREW SCOTT, H. T. BEATTY, R. A. HURST, JNO, C. EVERSOLE, W. C. MARSHALL AND J. M. BEATTY, ATTORNEYS FOR APPELLANT.

J. B. WHITE, E. E. HOGG, W. S. PRYOR, AND J. H. HAZELRIGG, ATTORNEYS FOR APPELLEE.

The questions discussed by counsel are:

1. Which of the candidates received a majority of the legal votes cast at the November election, 1903, for Commonwealth's attorney of the Twenty-third Judicial District?

2. Whether, if the contestant, Adams, received a majority of the votes, he was ineligible to the office by reason of the county in which he resided having been, by an act of the Legislature, taken from the Twenty-third District and put in another district after the election and pending the contest, and thereby creating a vacancy in the office?

3. Whether, by reason of frauds practiced in the election there was a valid election held in said district for said office?

(The briefs are very elaborate, and no summary made by counsel for either side, the reporter will not undertake to make extracts therefrom of the various "points and authorities" discussed.—Reporter.)

OPINION OF THE COURT BY JUDGE O'REAR—REVERSING.

Appellant and appellee were contending candidates at the November election, 1903, for the office of Commonwealth's attorney for the Twenty-third Judicial District. At that time the district was composed of the counties of Estill, Lee, Breathitt, Wolfe, and Magoffin. The election occurred on November 3, 1903. Appellant then resided in Magoffin county

and appellee in Lee county, and they had so resided for many years. Each was also otherwise eligible to the office. The precinct election officers of the various precincts in the district certified to their respective county canvassing boards the result of the election in the several precincts. These boards, in due course, from those certificates certified the results in their respective counties to the State canvassing board, who therefrom, and on the face of the returns, found that appellee had received the highest number of votes for the office, and issued a certificate of his election accordingly, upon which appellee was commissioned. Appellant, within the time prescribed by statute, filed his action in the Lee circuit court, contesting the election. Numerous grounds of fraud, bribery, intimidation, illegal voting, and falsification of the returns after the election and before the vote was certified to the county canvassing boards were charged in general terms, and with particularity. From these allegations it appeared as a matter of mathematical deduction, if they were true, the result as certified to the State board was false, and that, instead of appellee, appellant was elected to the office. Disposing here of a criticism of the petition based on its failure to charge in terms that the frauds and other irregularities complained of entered into the result as certified to the State board, it is enough if the necessary import of the charge shows the actionable fact to exist, without reference to the employment of well-chosen terms of art. The petition in this case, construed as its language necessarily required it should be, fairly contains a charge of the fact. Concerning proceedings to prevent frauds in elections, section 1591, Kentucky Statutes, 1903, provides: "This chapter shall be liberally construed so as to prevent any evasions of the prohibitions and penalties by shift or device." Such a laudable purpose could not be thwarted by a different rule of

construing the pleadings in a case brought to prevent what
the statute was enacted to prevent. The answer denied all
the averments of the petition, upon which appellant based
his contest, and contained numerous counter charges of
frauds and irregularities by appellant and his partisans,
which, appellee contended, when corrected, would increase
his apparent majority.

The regular circuit judge declining, for personal reasons,
to preside in the case, a special judge was commissioned to
try it. The case was elaborately prepared. The judgment
of the lower court was that appellant had received a majority
of the legal votes, and had been elected to the office, and
that appellee had not been elected. But the circuit court
also adjudged that appellant was not entitled to recover the
office, because of a change of the distroct, by which the county
of his residence was taken out of the Twenty-third District,
and placed in the Thirty-first Judicial District. Upon the
first part of the judgment, declaring that appellant had re-
ceived a majority of the legal votes at the November election,
1903, for the office of Commonwealth's attorney for the
Twenty-third Judicial District, and that appellee had not,
we concur with the trial judge. It would serve no useful
end to set out in detail in this opinion the facts established
by the evidence. They are such as to leave no doubt in the
minds of the court of the correctness of the conclusions
thereon reached by the trial judge. They bring up no new
or novel question for decision. Similar occurrences have
arisen in other cases which have been before the court, upon
which the law has been declared, and about which we enter-
tain no doubt. The trial judge appears to have applied the
decisions of this court already reported to the facts evolved.
Obviously, a principle of law once established, so long as it
is adhered to, must apply alike to all similar cases. The

statutes regulating the holding of elections have been framed and revised with great care, with the sole end of assuring the great constitutional guaranty of fair and equal elections. All rules of law applied by the courts are to enforce this basic principle of republican government. All that tends to unlawfully thwart the popular will as expressed by the electorate at the polls, must be disfavored by the courts as it is by all legislative enactments.

The other question is a novel one in this State. After the November election, 1903, and after either appellant or appellee had been elected to the office of Commonwealth's attorney for the Twenty-third Judicial District for the term of six years beginning January 1, 1904, and after this suit had been instituted and the issue was joined, the Legislature enacted a statute, which was approved March 21, 1904, creating the Thirty-first Judicial District. Acts 1904, p. 125, c. 51. The county of Magoffin was placed in the new district. There was no emergency clause to the act; hence it did not become a law till June 13, 1904. There was no evidence whatever in this suit whether appellant had continued to reside in Magoffin county or had moved. The original petition, filed December 19, 1903, alleged that appellant was a resident of Magoffin county. An amended petition was tendered by appellant September 23, 1904, before the case was closed, in which he averred that on March 1, 1904, he in good faith removed his place of residence to Beattyville, in Lee county, and had been ever since, and was then a resident of that county, and had never ceased to be a resident of the Twenty-third Judicial District. The trial court rejected this amendment and refused to let it be filed. Doubtless this action was in view of subsection 12 of section 1596a, Kentucky Statutes, 1903, regulating proceedings in contested election suits. That subsection requires the petition to set

Adams v. Roberts.

out the grounds upon which the validity of the certified re-
sult is assailed, and the time within which it must be filed.
The answer must be filed within twenty days after the sum-
mons is served upon the contestee, and, besides containing a
denial of the grounds alleged in the petition, may set out
grounds of contest against the contestant. All grounds are
required to be specially pointed out, "and none other shall
thereafterward be relied on by said party." A reply is al-
lowed to be filed within ten days after the answer, which
completes the issue; the section providing then that no sub-
sequent pleading shall be allowed. The last clause is the
one thought to be prohibitory of the filing of the amendment.
Whether the expression has reference only to the setting up
of new grounds for contest by either party which were in
existence when the suit or original pleadings were filed, or
to merely note an exception to the civil practice in this
State of pleading to an issue of fact by rejoinder and other
pleadings subsequent to a reply, it is not necessary to here
decide. Nor do we decide whether, if a matter attempted to
be pleaded is done inartfully, within seasonable time, and
within the sound discretion of the court, an amendment may
be allowed to cure the defect. But the court is of opinion
that, where anything occurs since the action was begun, and
after the time of pleading, but which is a relevant and nec-
essary fact to be shown in aid of the original grounds as-
serted, but not otherwise, a proper pleading, placing the fact
in the record, ought to be allowed. In this case we decide
that if the fact was necessary to be shown that appellant had
moved, it might be pleaded as offered under the circum-
stances, or might have been proved under the general issue
though not pleaded.

Section 132 of the Constitution empowers the General As-

**Vol. 119—24**

sembly, when deemed necessary, to establish additional dis-
tricts, not to exceed one for each 60,000 of population of the
State, exclusive of cities having more than 150,000.  It may
be conceded, then, that the Legislature, in its discretion, had
the right to establish the new Thirty-first District.  Some
stress has been laid on the fact that the act creating the new
district expressly provides that the circuit judge and com-
monwealth's attorney in office in the Twenty-Third District
should continue to exercise the duties of their offices in the
latter district.  This can not be held to confer any
right that did not exist, and while it may evince a purpose
on the part of the Legislature not to interfere with any
rights already attached, it could not have had the effect to
interfere with them, though a contrary purpose had been ex-
pressed.  An office created by the Constitution could not be
abolished by the Legislature without the express warrant of
the Constitution.  Though the Legislature is given the power
to abolish the office of Commonwealth's attorney in this State,
until it does so it can not abolish the tenure of any rightful
incumbent of the office.  He might be impeached, but not leg-
islated out of office.  Cooley on Consti. Lim. (6th Ed.), 482;
Black Const. Prohibitions, p. 119, sec. 99.  By section 100
of the Constitution no person shall be eligible to the office of
Commonwealth's attorney who is not at the time of his elec-
tion a citizen of this State, and who has not resided in the
State two years, and one year in the county and district in
which he is a candidate.  If this be held to require a con-
tinued residence in the district, failing which an abandonment
of the office for that cause would follow, still there is noth-
ing in the section which interferes with the right of such
officer to change his residence at his pleasure within the dis-
trict.  And while it may be held that one assuming a dis-
trict office takes it subject to the constitutional right of the

State to make new districts, which may in part affect the territory of the one in which the officer was elected, notwithstanding such officer continues to be an officer of the old district—the one in which he was elected. The right to make new districts must be exercised in view of other constitutional rights. If its effect be to deprive one of his office in violation of the terms of the Constitution, which protects him and his constituents who elected him from removal by the Legislature otherwise than by impeachment, the act would be void. State ex rel. Howard v. Johnson, 101 Ind., 223. The right of an incumbent of a district office, where he was required by law to reside in his district, to change his residence when his home county has been cut off into an another or new district, so as to retain his elegibility to the office to which he was elected, has been up for consideration in other States. In State ex rel. Ives v. Choate, 11 Ohio, 511, the effect of such a statute was discussed. It was said: "It is, however, alleged that this rule will enable the Legislature at any time, by a general law, to oust from office, without the form of impeachment, and in violation of the spirit of the Constitution, many associate judges, and any president judge of this State, by changing the limits of the counties and of the circuits in which they severally reside so as to place their residence in some other county or circuit." While decrying such aspersions upon a co-ordinate branch of government, the court reached the conclusion that "the General Assembly, if it should ever attempt so violent a measure as the argument supposes, could not effectually accomplish the object. The judges would, in all cases, be able to defeat the scheme by a seasonable removal within the newly-prescribed limits of his county or circuit." In State ex rel. Attorney General v. Messmore, 14 Wis., 163, the Constitution required a circuit judge to reside in his district. By

the creation of a new district the residence of a judge was placed without the limits of the circuit for which he was elected. He was held to be entitled to remove into his old district after the act of removal became effective, and to have a seasonable time thereafter to do so. In that State the Constitution, it is true, prohibited the making of new districts so as to have the effect to remove a judge from office. The court held, though, that the power to create the new district clearly existed, and the removal of the judge who was cut off into it into his old district saved the constitutionality of the act.

But were the question less clear than it is, the proper scope of this action does not go so far as that one private citizen may be allowed to raise the question whether a public officer has abandoned his office. This suit is allowed especially by statute, and is limited (subsection 12 of section 1596a) to a determination of which of two claimants was elected to the office in dispute, or whether either was. Manifestly, whether the one selected has since his election done something that might subject him to removal by the proper tribunal is wholly beside the question. This is particularly true in this ' case. Even if appellant had never removed from Magoffin county to Lee, and if the act creating the new district was valid as to him notwithstanding such failure to move, still that act did not become effective, as stated, till June 13, 1904. It neither could give nor affect rights till it did become effective as a law. So appellant, if elected to this office in November, 1903, was entitled to its emoluments from the first Monday in January, 1904, till such time as he might vacate it, if he did vacate it before the expiration of the full term. The decision of the case on its merits as they were when the contest was begun in December, 1903, was the sole matter before the court. In such an inquiry the question of

eligibility, affected by events subsequent to the election, could not at all enter. A trial of the effect of such subsequent occurrences is in an entirely distinct tribunal and action. Kirkpatrick v. Brownfield, 97 Ky., 558, 17 R., 376, 31 S. W., 137, 29 L. R. A., 703, 53 Am. St. Rep., 422; Lowe v. Commonwealth, 3 Metc., 237; Commonwealth v. Jones, 10 Bush, 725; Brown v. Grover, 6 Bush, 1; Page v. Hardin, 8 B. Mon., 648-672.

Appellee has prosecuted a cross-appeal from the judgment denying his title to the office. Appellant has moved to dismiss the cross-appeal because appellee did not execute a bond. Without deciding whether a cross-appeal can be prosecuted, or is necessary, or whether it is affected by the provision requiring a bond of the appellant as a condition precedent, it is enough to say here that upon the facts of the case affecting the election we agree with the finding and judgment of the trial judge. It is not deemed necessary to discuss them in detail in the opinion for the reasons given concerning the facts upon the original appeal.

The judgment of the circuit court is reversed, and cause remanded for judgment in conformity with this opinion.